# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Jacob S. Jackson, ) | Civil Action No.: 5:17-cv-01015-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Eastman Chemical Company and Mundy ) | |
| Maintenance Services and Operations, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Jacob S. Jackson filed this action alleging that he was injured as a result of the negligence of Defendants Eastman Chemical Company ("Eastman") and Mundy Maintenance Services and Operations, LLC ("Mundy") (together "Defendants"). (ECF No. 1.)

This matter is before the court by way of Eastman's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis that Jacob Jackson was a "statutory employee" under the South Carolina Workers' Compensation Act (the "Act"), S.C. Code §§ 42-1-10 to -19-50 (2017), such that the Act is Jackson's exclusive remedy. (ECF No. 53.) Jackson opposes Eastman's Motion in its entirety. (ECF No. 58.) For the reasons set forth below, the court **GRANTS** Eastman's Motion to Dismiss.

## I. RELEVANT BACKGROUND TO PENDING MOTION

This case arises out of an industrial accident that occurred on December 6, 2016, at a chemical manufacturing facility (the "Facility") located "on the banks of the Congaree River near Sandy Run a few miles northeast of Gaston in Calhoun County, South Carolina." (ECF No. 58 at 2.) Eastman operated the Facility from 1967 until 20ll manufacturing polyethylene terephthalate ("PET"), a material "commonly used in soda bottles." (ECF No. 1 at 3 ¶¶ 9–11.) On January 31, 2011, Eastman sold specified parts of the Facility to DAK Americas, LLC

("DAK"), "a subsidiary of Alpek S.A.B. de C.V., a Mexican chemical manufacturing company." (*Id.* ¶ 11.) "DAK purchased . . . polymer and chemical manufacturing lines, certain on-site utilities and services to support such operations, but specifically excluded some retained facilities at the Plant." (ECF No. 58 at 3.) "Among the retained assets [of Eastman] were: 1,000 acres of land, six to ten buildings and four production lines out of thirteen which are making substantially similar products to those produced prior to the sale (the 'Retained Assets')." (*Id.* (citing ECF No. 78-1 at 29:14–30:25, 32:3–14, 53:1–25 & ECF No. 78-2 at 28:13–29:9, 53:3–15).) Additionally, "[w]hen Eastman sold the Facility to DAK, nearly all of Eastman's 400 employees at the site became DAK employees at the time of the sale and continued doing the same jobs." (ECF No. 53 at 4 (citing ECF No. 78-1 at 57:1–23).) As a result, DAK's employees "operate[d] and maintain[ed] Eastman's retained lines the same way that they did while they were employed by Eastman." (ECF No. 78-1 at 57:13–17.)

"Two contracts between Eastman and DAK memorialize that agreement." (ECF No. 53 at 5.) "First, under the Operating Agreement, Eastman pays DAK to provide its employees to operate the Eastman Retained lines, which generally run twenty-four hours a day." (*Id.* (referencing ECF No. 53-3).) "The operators report to supervisors within DAK's chain of command, and the DAK Area Manager serves as the liaison to Eastman." (*Id.*) "Second, there is a separate Services Agreement, under which Eastman pays DAK to provide, among other things, employees from DAK's maintenance department to perform maintenance and repairs on the Retained Lines." (*Id.* (referencing ECF No. 53-4).) "DAK's employees, including Plaintiff [Jackson], were Eastman's operations and maintenance workforce at the time of the Incident pursuant to the Operations Agreement and Services Agreement." (*Id.* at 6 (citations omitted).)

As an operations and maintenance worker, Jacob Jackson did the same type of work for DAK after the sale as he did for Eastman before the sale. (ECF No. 78-1 at 60:1–6.)

After purchasing the Facility, DAK contracted with Mundy to "provide[] maintenance services at the site." (ECF No. 78-2 at 126:19–20.) Employees of Mundy were asked on December 3, 2016, "to heat a drain pipe [] near the Pump with a torch flame." (ECF No. 55 at 3.)

On December 6, 2016, Jackson, along with Alton Ray Zeigler and Kevin Vann, were assigned to perform preventative maintenance on line A, one of the four Eastman "Retained Asset" production lines, which involved draining the AC-11 loop to clean out any molten material and pulling/separating the AC-11 pump from its housing to replace a leaking seal. (ECF No. 78-1 at 109:5–11, 114:9–14, 115:7–15 & 135:2–24.) During the performance of this maintenance, Jackson was injured as "the result of an explosion which covered [] Jackson in the superheated chemical monomer and propelled an industrial pump, which weighs approximately 300 pounds, almost nine feet across a workspace before coming to rest as it put a hole in a cement block wall." (ECF No. 58 at 1.)

As a result of the foregoing, Jackson filed an action in this court on April 19, 2017, alleging claims against Eastman for negligence and negligent failure to warn and against Mundy for negligence. (ECF No. 1 at 8 ¶ 57–12 ¶ 75.) Additionally, Jackson alleged that he is entitled to an award of punitive and exemplary damages. (*Id.* at 12 ¶ 76–13 ¶ 79.) After engaging in court-ordered jurisdictional discovery with Jackson (*see* ECF No. 38 at 1 ¶ 2), Eastman filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction on November 30, 2017, asserting that Jackson was a "statutory employee" under the Act such that the Act is Jackson's exclusive remedy. (ECF No. 53.) In his December 21, 2017 Response in Opposition, Jackson

expressly did not agree that he is Eastman's statutory employee for purposes of its Motion. (ECF No. 58.) In the alternative, Jackson argued that Eastman cannot avail itself of tort immunity under the Act's exclusive remedy provision because it failed to secure the payment of compensation as prescribed by the Act. (*Id.* at 11–12.)

The court heard argument from the parties regarding the instant Motion on January 9, 2018. (ECF No. 65.) At the hearing, counsel for Alton Ray Zeigler in a related case suggested during his presentation that the best evidence of an insurance policy that provides workers' compensation coverage "is to have an affidavit from the insurance company." (ECF No. 70 at 36:24–25.) Thereafter, on January 12, 2018, Eastman submitted the Declaration of David Kroll (ECF No. 66-1), the Assistant Vice President of Workers' Compensation Claims for ACE American Insurance Company ("Ace Insurance"). Kroll declared that:

> If a court determined that workers employed by DAK Americas, LLC were the statutory employees of Eastman Chemical Company under the applicable statutes and case law in South Carolina, and thus had claims under the South Carolina Workers' Compensation Act against Eastman Chemical Company, ACE American Insurance Company would respond and pay all benefits to which the workers were entitled under the policy in accordance with the laws of South Carolina.

(*Id.* at 3 ¶ 12.) In response to an Objection to and Motion to Exclude Kroll's Declaration (ECF No. 72) filed by Jackson on January 23, 2018, the court entered a Text Order (ECF No. 97) on May 21, 2018, that "allow[ed] the parties sixty (60) days, or until July 20, 2018, to conduct the following discovery:" (1) service of appropriate discovery on Ace Insurance and (2) the deposition of Kroll. (*Id.*) After the parties conducted this additional limited discovery, they filed supplemental briefs between October 2–4, 2018. (*See* ECF Nos. 108, 109, 110.)

## II.  LEGAL STANDARD

A.  <u>Rule 12(b)(1) Motions to Dismiss Generally</u>

Article III of the Constitution limits the jurisdiction of the federal courts to the

4

consideration of "cases" and "controversies." U.S. Const. art. III, § 2. "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted). The plaintiff bears the burden of proof on questions of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

Normally, this court would have jurisdiction over the instant matter under 28 U.S.C. § 1332(a)(1) because the minimum requirements of diversity are met.[1] However, "[t]he essence of diversity jurisdiction is that a federal court enforces State law and State policy." *Angel v. Bullington*, 330 U.S. 183, 191 (1947) (federal court sitting in diversity case could not grant deficiency judgment barred by North Carolina statute). "Thus, there are cases where, even if diversity of citizenship exists, a federal court 'will not take jurisdiction [ ] unless the plaintiff has

---

[1] Jackson alleges that there is complete diversity of citizenship between him and Defendants and the amount in controversy herein exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs. (ECF No. 1 at 2 ¶ 4.) More specifically, Eastman is a corporation organized under the laws of Delaware with its principal place of business in Kingsport, Tennessee. (ECF No. 1 at 1 ¶ 2.) Mundy is a corporation organized under the laws of Texas with its principal place of business in Houston, Texas. (*Id.* at 2 ¶ 3.) Jackson is a citizen and resident of Calhoun County, South Carolina. (*Id.* ¶ 1.) Moreover, the amount in controversy exceeds $75,000.00 based on Plaintiffs' representation. (*Id.* at 2 ¶ 4.)

asserted a claim cognizable in the state courts.'" *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3602, at 375 (2d ed. 1984); *see also Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980) (finding that South Carolina "door-closing" statute deprived federal court of jurisdiction). Accordingly, if an exclusive remedy provision applies, the district court should treat the issue as one falling under the province of a 12(b)(1) dismissal, rather than a dismissal for failure to state a claim upon which relief can be granted. *E.g.*, *Banks v. Va. Elec. & Power Co.*, 205 F.3d 1332, at *2 (4th Cir. Feb. 17, 2000) (affirming district court's dismissal under Rule 12(b)(1) and "find[ing] no merit to plaintiff's contention that the district court improperly utilized Rule 12(b)(1) to dismiss his action"); *Lentine v. 3M Co.*, C/A No. 6:08-2542-HMH, 2009 WL 792495, at *2 (D.S.C. Mar. 23, 2009) ("The determination of whether a worker is a statutory employee is jurisdictional and a question of law." (citing *Posey v. Proper Mold & Eng'g, Inc.*, 661 S.E.2d 395, 398 (S.C. Ct. App. 2008))); *Adams v. Davison-Paxon Co.*, 96 S.E.2d 566, 571 (S.C. 1957) ("It has been consistently held that whether the claim of an injured workman is within the jurisdiction of the Industrial Commission is a matter of law for decision by the court, which includes the finding of the facts which relate to jurisdiction." (citations omitted)); *Poch v. Bayshore Concrete Prods./S.C., Inc.*, 686 S.E.2d 689, 694 (S.C. Ct. App. 2009) ("The General Assembly has vested the South Carolina Workers' Compensation Commission with exclusive original jurisdiction over an employee's work-related injuries." (citing *Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002))); *Voss v. Ramco, Inc.*, 482 S.E.2d 582, 584 (S.C. Ct. App. 1997) (observing that the statutory employee determination is jurisdictional (citing, *e.g.*, *Adams*, 96 S.E.2d at 571)).

B. <u>Statutory Employers and Employees</u>

The Act "contains an 'exclusivity provision.'" *Poch*, 686 S.E.2d at 694 (citing *Edens v. Bellini*, 597 S.E.2d 863, 867 (S.C. Ct. App. 2004)). "This exclusivity provision states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.
>
> Provided, however, this limitation of actions shall not apply to injuries resulting from acts of a subcontractor of the employer or his employees or bar actions by an employee of one subcontractor against another subcontractor or his employees when both subcontractors are hired by a common employer.

*Poch v. Bayshore Concrete Prods./S.C., Inc.*, 747 S.E.2d 757, 761 (S.C. 2013) (quoting S.C. Code Ann. § 42-1-540 (1985)). "The exclusivity provision of the Act applies both to 'direct' employees and to those termed 'statutory employees' under § 42-1-400." *Id.* (quoting *Edens*, 597 S.E.2d at 869). Pursuant to the exclusivity provision, "[a] statutory employee may not maintain a [] [tort] action against his direct employer or his statutory employer [for a work related accident or injury]; rather, the [statutory] employee's sole remedy for work-related injuries is under the Act."[2] *Maloney v. Landmark Tours & Travel, Inc.*, C/A No. 9:10-0725-MBS, 2011 WL 1526731, at *2 (D.S.C. Apr. 19, 2011) (citing *Hancock v. Wal–Mart Stores,*

---

[2] Statutory employee is defined by S.C. Code Ann. § 42-1-400 (1962). Section 42-1-400 provides as follows:

> When any person, . . . referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (. . . referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

*Id.*

7

*Inc.*, 584 S.E.2d 398, 400 (S.C. Ct. App. 2003)); *see also* S.C. Code Ann. § 42-1-540 (1985).

Three tests are applied to determine whether the activity of a worker is sufficient to make him a statutory employee of the owner or upstream employer within the contemplation of the Act: "(1) is the activity an important part of the owner's business or trade; (2) is the activity a necessary, essential, and integral part of the owner's trade, business, or occupation; or (3) has the identical activity previously been performed by the owner's employees?" *Edens*, 597 S.E.2d at 868. "If the activity at issue meets even one of these three criteria, the worker qualifies as the statutory employee of the owner." *Id.* "Since no easily applied formula can be laid down for determining whether work in a particular case meets these tests, each case must be decided on its own facts." *Glass v. Dow Chem. Co.*, 482 S.E.2d 49, 51 (S.C. 1997). "Any doubts as to a worker's status should be resolved in favor of including him or her under the Worker's Compensation Act." *Poch*, 747 S.E.2d at 761 (quoting *Posey*, 661 S.E.2d at 400).

### III. ANALYSIS

The instant dispute between the parties presents two questions for the court's consideration: (1) was Jacob Jackson a statutory employee of Eastman on December 6, 2016; and (2) did Eastman have workers' compensation insurance to cover Jacob Jackson in accordance with the requirements of the Act? The court addresses each issue separately below.

A. <u>Statutory Employee</u>

*1. The Parties' Arguments*

Eastman argues that it is entitled to dismissal of Plaintiffs' lawsuit because Jackson "was a statutory employee of Eastman at the time of the incident giving rise to this lawsuit." (ECF No. 53 at 1.) In support of this argument, Eastman asserts that it is able to satisfy all three tests to result in a finding that it was a statutory employer for Jackson.

First, as to whether the activities that led to the December 2016 accident were an

8

important part of its business or trade, Eastman asserts as follows:

> Eastman's business at the Facility is manufacturing specialty chemicals used in the plastics industry. These chemicals are produced through production lines, including Line A, that are operated by DAK employees at the Facility. Line A and the AC-11 pump are key components of Eastman's manufacturing business. Regular maintenance of Line A, including scheduled shutdowns, is important to the proper functioning of the lines. The AC-11 pump moves the liquid components being processed in Line A through pipes and a cycle of chemical reactions that are a necessary part of the production process. At the time of the incident, Plaintiff and other workers were opening the AC-11 pump in order to drain Line A for maintenance and cleaning. The maintenance and cleaning scheduled to be performed on Line A, including the repair of the seal on the AC-11 pump, was essential to Eastman's business because the proper functioning of Line A equipment is necessary to ensuring that Eastman's end-product is produced to the quality standards required by the industry.

(ECF No. 53 at 18 (internal citations omitted).)

Next, as to whether the activities that led to the December 2016 accident were necessary, essential, and integral parts of its trade or business, Eastman asserts as follows:

> Eastman's business at the Facility is fundamentally dependent upon the services provided by DAK under the Operations Agreement and the Services Agreement. As [Mark] Leonhardt[, DAK's site manager,] and [Doug] Rister[, Eastman's production manager,] testified, at the time of the 2011 sale, Eastman and DAK created an ongoing contractual relationship under which Eastman continued to manufacture specialty chemicals on its retained production lines, but Eastman transferred almost all of its 400 employees to DAK and depended upon DAK to operate and to maintain Eastman's production lines. Since February 1, 2011, the normal business activities of operating and maintaining Eastman's production lines have been performed by DAK employees working for Eastman pursuant to the contracts. Eastman uses DAK's workers as its only workforce at the Facility.
>
> Under the Services Agreement, DAK was required to provide a Maintenance Workforce comprised of maintenance workers who have skill sets with respect to pre-polymer and polymer gear pumps, polymer filters, polymer pelletizers, PTA systems, and PET specialized equipment. Also pursuant to the Services Agreement, DAK assigned its industrial maintenance mechanics, including Plaintiff Vann, to the Maintenance Workforce to perform tasks for Eastman because those employees had the requisite skills to provide the maintenance services required by the Services Agreement. Without the services provided by DAK's industrial maintenance mechanics, there would be no maintenance on its equipment at the Facility.

(*Id.* at 22–23 (internal citations omitted).)

Finally, as to whether the activities that led to the December 2016 accident were identical to those previously performed by its employees, Eastman asserts that the maintenance work performed by Jackson was "historically the exact type of work performed by Eastman's own employees." (*Id.* at 24.) Eastman further asserts that "[p]rior to the 2011 sale to DAK, Eastman did its own maintenance work, including the type of work performed by Plaintiff, with its own workforce at the Facility." (*Id.*; *see also* at 27 ("Both Rister and Leonhardt have testified that Eastman previously employed maintenance mechanics at the Columbia site prior to the 2011 sale, and that those maintenance mechanics performed the same tasks that were being performed by Plaintiff at the time of the incident." (citations omitted)).)

Jackson does not agree that he was Eastman's statutory employee arguing that his "status as a statutory employee of Defendant Eastman is a question of fact to be determined by the jury in this case." (ECF No. 58 at 9–10 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958)).) Jackson asserts that he was not Eastman's statutory employee under the first or second test because he was not performing "routine maintenance, but rather was specialized repair work that had never been done before on the subject equipment and that Eastman was not capable of handling with its own onsite work force." (*Id.* at 21.) Moreover, Jackson asserts that the work he was performing was unrelated to Eastman's "trade or business" because "after the 2011 sale to DAK, Eastman was no longer in the business of manufacturing chemicals or maintaining the equipment for the manufacturing of those chemicals." (*Id.* at 23.) Finally, Jackson asserts that he is not a statutory employee of Eastman under the third test because after February 1, 2011, "Eastman has not had any direct employees at the Plant capable of performing the type of repair work that Plaintiff Jacob Jackson was performing [] on December 6, 2016

pursuant to an Unusual Job Permit issued by Eastman." (*Id.* at 25.)

2. *The Court's Review*

Despite Jackson's protestations, this court can decide a statutory employee issue for reasons stated as follows:

> The determination of whether or not [plaintiff][] is a statutory employee of [defendant][] is a question of subject matter jurisdiction. *Carter v. Florentine Corp.*, 423 S.E.2d 112, n.1 (1992); *McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890, 892 (1991). Every court has the power and duty to determine whether or not it has jurisdiction of a cause presented to it for determination, including the power to decide all questions, whether of law or fact, which are necessary to determining jurisdiction. *See Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 132 S.E.2d 18, 21–22 (1963). "It is recognized that in federal court the question of a company's trade, business or occupation is often one of fact for the jury." *Singleton v. J.P. Stevens & Co.*, 533 F. Supp. 887, 888 (D.S.C. 1982), *aff'd*, 726 F.2d 1011 (4th Cir. 1984), citing *Byrd v. Blue Ridge Rural Electric Coop.*, 356 U.S. 525, 78 S. Ct. 893, 2 L.Ed.2d 953 (1958). *Byrd*, however, "does not stand for the proposition that if there is no issue genuinely in dispute, the question of employment status must be nevertheless submitted to a jury." *Id.* Jurisdictional questions present issues for the determination of the court and not a jury. *Bargesser v. Coleman Co.*, 230 S.C. 562, 96 S.E.2d 825, 827 (1957). The Fourth Circuit Court of Appeals in *Walker v. United States Gypsum Co.*, 270 F.2d 857 (4th Cir. 1959), *cert. denied*, 363 U.S. 805, 80 S. Ct. 1240, 4 L.Ed.2d 1148 (1960), stated that the matter of employment status, and whether jurisdiction lies with the Workers' Compensation Commission or the courts is a question peculiarly appropriate for summary judgment when there is no disputed genuine issue of fact. *Id.* at 860–61.

*Carrier v. Westvaco Corp.*, 806 F. Supp. 1242, 1244–45 (D.S.C. 1992).

To determine whether Jackson was a statutory employee of Eastman at the time of he was injured, the court considered the parties' evidence concerning Eastman's general trade, business, or occupation. *See Poch*, 747 S.E.2d at 761 ("[T]his Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence." (citation omitted)). Upon its review, the court observes that the parties dispute what is Eastman's business, trade, or occupation. Eastman asserts that it is in the business of producing specialty chemicals. (ECF No. 78-1 at 22:21–23; ECF No. 78-2 at 31:10–13, 166:19–

11

167:4.) Jackson asserts that Eastman is "a chemical product sales company, selling chemicals produced by DAK employees on equipment owned by Eastman" because it "does not receive the raw materials, does not have any employees capable of running the operations of the lines, does not remove the product from the line, and does not place the product into shipping containers." (ECF No. 59 at 23 (citing ECF No. 78-2 at 92:15–93:19)). Despite the parties' contrasting positions, there is no dispute of fact that Eastman's business requires the presence of chemical product and without such chemical product, Eastman cannot sell or produce anything. Moreover, caselaw does not necessarily require that such product be exclusively produced by Eastman's employees. *See Singleton v. J.P. Stevens & Co., Inc.*, 533 F. Supp. 887, 890 (D.S.C. 1982) ("[A] person is performing the trade, business or occupation of the employer if the person contracts with the owner to perform a duty which is essential to the function of the owner's continued business despite the fact the owner may never have performed the same chore with his own employees." (citations omitted)).

On the day Jackson was injured, there is also no dispute of fact that he was performing preventative maintenance on one of the lines that produces chemicals for Eastman. (ECF No. 78-1 at 112:2–117:2.) The appellate courts of South Carolina have held that maintenance considerations are an important part of a statutory employer's trade, business, or occupation. In *Marchbanks v. Duke Power Co.*, 2 S.E.2d 825 (S.C. 1939), "the [South Carolina Supreme] Court found that an independent contractor who was hired to paint telephone poles on behalf of Duke Power was a statutory employee under the Workmen's Compensation Law on the basis that Marchbanks was engaged in part of the defendant's business, because the maintenance of utility poles was necessary to the distribution of electricity." *Singleton*, 533 F. Supp. at 890 (citing *Marchbanks*, 2 S.E.2d at 837). In *Boseman v. Pac. Mills*, 79, 8 S.E.2d 878, (S.C. 1940), the

South Carolina Supreme Court stated as follows in finding that the maintenance of the water tank was an integral part of the mill's business for fire prevention purposes:

> The tank was an integral part of the mill business. There was also testimony to the effect that the mill desired that the work on the inside of the tank be completed as soon as possible so that its every day, ordinary service, that of fire protection, could be resumed, it being shown that the mill depended upon this tank for such protection. The very nature of the work done by the mill, that of the manufacture of cotton into cloth, especially required the best of protection against fire. Hence, this tank was particularly necessary and essential in the operation and carrying on of the business of the mill. It, therefore, follows that the painting of the tank was such a part of the trade, business or occupation of the Pacific Mills as would constitute Martin a subcontractor and thus render the mill liable to the beneficiary of Boseman for payment of compensation.

*Id.* at 880. In *Bridges v. Wyandotte Worsted Co.*, 132 S.E.2d 18 (S.C. 1963), the Supreme Court of South Carolina again held that maintenance was part of the trade, business, or occupation of the statutory employer:

> In the present case, the defendant was engaged in the manufacture of woolen goods. Its machinery was operated by electricity derived in part from its own hydro-electric plant and in part by purchase from Duke Power Company. The work here involved was the repair or replacement of the transmission line owned by the defendant and located on its property, over which electric current, necessary for the operation of its business, was brought into its plant from Duke Power Company. These lines had been replaced on a previous occasion, and customarily maintained, by a qualified crew regularly employed by the defendant. Because the regular employees of the defendant had been overworked and needed rest, the defendant contracted with Collins Electric Company, plaintiff's employer, to make the needed replacements on its transmission lines. The replacement of the lines was made necessary by an overload placed upon them by the addition of machinery in defendant's mill. It is reasonably inferable from the record that the work of replacing the transmission lines in question was [] an unusual or extraordinary undertaking, but one customarily done by defendant's employees who were maintained for such purposes. The maintenance and repair of its electrical system was, therefore, made a part of the work done by the defendant in the prosecution of its business of manufacturing woolen goods.

*Id.* at 23.

Therefore, upon consideration of the foregoing caselaw in the context of the facts presented by the parties, the court is persuaded that maintenance on a line that produces

chemicals that Eastman sells is an important part of Eastman's trade, business, or occupation. *E.g.*, *Singleton*, 533 F. Supp. at 891 ("The continued maintenance and repair of these electrical lines were absolutely essential to the continued operation of the textile plant."). Accordingly, the court finds that Jacob was a statutory employee of Eastman.[3]

B.      Existence of Sufficient Insurance Coverage

*1. The Parties' Arguments*

In support of the position that it had secured workers' compensation coverage for Jackson prior to the December 6, 2016 accident, Eastman cites to the plain language of its workers' compensation policy (the "Policy") which states that Ace Insurance "will pay promptly when due the benefits required of you [Eastman] by the workers compensation law." (ECF No. 110 at 2 (citing ECF No. 110-5 at 11 Part 1(B)).) In addition, Eastman cites to Kroll's Declaration (*supra* ECF No. 66-1) and his testimony at a June 29, 2018 deposition wherein he stated that (1) Eastman had the Policy in place on the date of the accident that injured Jackson, (2) the Policy will pay workers' compensation benefits required by law of Eastman in South Carolina, and (3) a finding by the court that Jackson was a statutory employee of Eastman would result in the payment of workers' compensation benefits due to him. (ECF No. 110-7 at 7:3–21, 11:14–12:24.)

Jackson challenges Eastman's position arguing that it cannot demonstrate its entitlement to coverage under the Act because it "failed to produce any evidence showing compliance with

---

[3] "An activity needs to meet just one of the three tests outlined in *Edens* for an employee to be a statutory employee under the" Act. *Jarman v. Beaufort-Jasper Water & Sewer Auth.*, No. 9:15-cv-00356-DCN, 2017 WL 1881330, at *3 n.2 (D.S.C. May 9, 2017) (citing *Edens*, 597 S.E.2d at 868). Because the court finds that Jackson was a statutory employee of Eastman since the maintenance work he was performing at his death was an important part of Eastman's trade, business, or occupation, the court is not required to address the second or third statutory employee tests outlined in *Edens*.

[S.C. Code] section 42-1-415[4] or that Eastman secured the payment of compensation as prescribed by [S.C. Code] § 42–5–20[5] by either directly purchasing workers compensation insurance covering the Plaintiff[s] or qualifying as a self-insurer." (ECF No. 58 at 12–13.) In this regard, Jackson asserts that "there is no evidence to demonstrate that prior to Plaintiff's injuries, Eastman procured and had in place workers' compensation insurance that would have provided Plaintiff with benefits as required by the Act." (ECF No. 109 at 6.) Jackson asserts that the Policy identifies forty-nine (49) entities as insured "but DAK is not one of them." (*Id.* at 6–7 (citation omitted).) Jackson next asserts that even if "the Policy covered DAK Employees such as Plaintiff, Defendant Eastman's actions are inconsistent with those of an insured seeking coverage for an employee under the terms of the Policy." (*Id.* at 7.) More specifically, Jackson points out that Eastman failed to perform coverage duties required by the Policy to include (1) failing to tell Ace Insurance about Jackson's injuries, (2) failing to provide Ace Insurance with the names and addresses of other injured persons and witnesses, (3) failing to provide Ace Insurance with legal documentation from the December 6, 2016 accident, and (4) failing to pay a coverage premium reflecting "the renumeration paid to Plaintiff or the other DAK employees during the Policy period. (*Id.* at 7–12, 18.) Finally, Jackson asserts that Eastman could not have

---

[4] "Notwithstanding any other provision of law, upon the submission of documentation to the commission that a contractor or subcontractor has represented himself to a higher tier subcontractor, contractor, or project owner as having workers' compensation insurance at the time the contractor or subcontractor was engaged to perform work, the higher tier subcontractor, contractor, or project owner must be relieved of any and all liability under this title except as specifically provided in this section." S.C. Code § 42-1-415(A) (2017).

[5] "Every employer who accepts the provisions of this title relative to the payment of compensation shall insure and keep insured his liability thereunder in any authorized corporation, association, organization, or mutual insurance association formed by a group of employers so authorized or shall furnish to the commission satisfactory proof of his financial ability to pay directly the compensation in the amount and manner and when due as provided for in this title." S.C. Code § 42-5-20 (2017). "The commission may, under such rules and regulations as it may prescribe, permit two or more employers in businesses of a similar nature to enter into agreements to pool their liabilities under the Workers' Compensation Law for the purpose of qualifying as self-insurers." *Id.*

secured workers' compensation insurance coverage on him prior to his injuries because the existence of coverage is predicated on the future action of the court declaring Jackson to be Eastman's statutory employee. (*Id.* at 13–15.)

*2. The Court's Review*

For its protections to apply, the Act required Eastman to "comply with [South Carolina Code] section 42-5-20 by either directly purchasing insurance to cover its potential workers' compensation liabilities or qualifying as a self-insurer before the owner may claim immunity under the Act's exclusive remedy provision." *Glover v. United States*, 523 S.E.2d 307, 311 (S.C. 1999); *see also Harrell v. Pineland Plantation, Ltd.*, 523 S.E.2d 766, 773 (S.C. 1999) ("Thus, an employer who fails to secure the payment of compensation as prescribed in section 42-5-20 loses its immunity under the Act's exclusive remedy provision." (citing 6 Arthur Larson, *Workers' Compensation Law* § 67.22 (1998))). Because there has not been any argument that Eastman qualifies as a self-insurer, the relevant inquiry is whether Eastman directly purchased insurance to cover its liability to Jackson and other similarly situated statutory employees. Upon its review, the court observes that the dispute between the parties is governed by *Poch*, the seminal decision by the South Carolina Supreme Court relevant to this issue.

In *Poch*, petitioners argued to the South Carolina Supreme Court that the South Carolina Court of Appeals had erred in finding that respondents could benefit from the Act's tort liability immunity since they failed to offer proof of or secure workers' compensation coverage for petitioners. 747 S.E.2d at 765. The majority of the South Carolina Supreme Court disagreed with petitioners and held that respondents preserved their immunity because there was evidence to support the circuit court's finding that both respondents retained workers' compensation insurance that would have covered the petitioners. *Poch*, 747 S.E.2d at 767. Respondents

16

offered the affidavit of the construction underwriter for the insurance company, who attested that respondents "had workers' compensation coverage at the time of the accident as there was an 'insurance policy [that] cover[ed]'" respondents. *Id.* The underwriter also attested that the insurance policy covered petitioners. *Id.* at 767–68.

In considering the aforementioned evidence, the court's majority found that an affidavit from an underwriter of the insurance carrier is sufficient evidence of proof of workers' compensation insurance. *Poch*, 747 S.E.2d at 767–68 ("The affidavit of the construction underwriter for St. Paul/Travelers Insurance Company specifically stated that the insurance policy covered Poch's and Key's workers' compensation claims."). The majority further noted that, under the Act, the responsibility for filing proof of compliance falls on the insurance carrier because the corporations were not self-insured. *Id.* The court reasoned that, without evidence to the contrary, respondents complied with the procurement of insurance requirements discussed in *Harrell* and reaffirmed in *Glover*. *Id.* The court also noted that no allegation or evidence in the record suggested that proof of compliance with S.C. Code Ann. § 42-5-20 was not filed. *Id.*

In contrast, the dissenters in *Poch* concluded that respondents did not submit adequate proof that they had secured or filed evidence of workers' compensation coverage as required by the Act and *Harrell*. *Id.* at 768. The dissenters concluded that the underwriter's affidavit did not contain the requisite specificity required because it did not refer to the precise type of coverage or time period covered. *Id.* at 769 ("An affidavit from an underwriter to the effect '[t]hat the insurance policy [covering both Bayshore entities] as written would have provided Workers' Compensation coverage for petitioners is insufficient to support a finding that the policy to which he refers contains the provisions required by S.C. Code Ann. § 42-5-70 (1984) or that

17

imposed by § 42-5-80(A) (Supp. 2012).").[6] *Id.* The dissenters noted that there was no evidence that respondents filed proof of insurance with the Commission. *Id.*

In this matter, Jackson argues this case is distinguishable from *Poch* because Eastman failed to produce any evidence showing that it procured insurance and Jackson has provided evidence showing that Eastman failed to procure insurance. Jackson contends that Eastman's evidence by way of Kroll is insufficient because, unlike the affidavit in *Poch*, Kroll is neither an underwriter nor does he specifically state Kevin Vann is covered. However, the court fails to find significance in this distinction. Kroll as Ace Insurance's Assistant Vice President of Workers' Compensation Claims attests that Eastman's Policy provides coverage to statutory employees. The question of whether an individual is a statutory employee is one for the courts. *E.g., Lentine*, 2009 WL 792495, at *2 ("The determination of whether a worker is a statutory employee is . . . a question of law." (citing *Posey*, 661 S.E.2d at 398)). Because the court has determined that Jackson is a statutory employee and Kroll attests that statutory employees are a covered group under the Policy, the failure to state Jackson's name is of little consequence and does not render insufficient the evidence submitted by Kroll.

The court is also not persuaded by Jackson's argument that there is no coverage because coverage "under the Policy is contingent upon future action of a court." (ECF No. 110 at 14.) The court perceives this to not be any different than when an insurer seeks a declaration of coverage pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *E.g., Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375–76 (4th Cir. 1994) ("[W]e have frequently

---

[6] However, the majority disagreed asserting that the dissenters placed form over substance and inexplicably found an unchallenged affidavit to be insufficient evidence. *Poch*, 747 S.E.2d at 767 n.13 ("The dissent refuses to accept this affidavit as evidence of proof of workers' compensation insurance . . . Accordingly, we discern no basis for which to reject the affidavit as it is by its very nature a sworn statement intended as documentary evidence in a legal proceeding.").

approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, . . . ." (citations omitted)).

Moreover, even if Jackson's assertions regarding Eastman's actions that are alleged to be inconsistent with those of an insured seeking coverage for an employee under the terms of the Policy are taken as fact, this evidence does not invalidate ACE Insurance's coverage as to Jackson. Jackson's evidence does not directly contradict Eastman's evidence that ACE Insurance would provide workers' compensation insurance coverage for a workers' compensation claim filed by Jackson and other similarly situated statutory employees. Therefore, the court finds that the affidavit and testimony from Kroll are sufficient evidence of workers' compensation insurance provided to statutory employees, a group which includes Jackson. The evidence Jackson points to is more closely tied to Eastman's duties under its policy to ACE Insurance rather than its duties under the Act.[7] Therefore, the court finds Eastman has provided sufficient evidence that it secured workers' compensation insurance from ACE Insurance to cover Jackson and other similarly situated statutory employees.

## IV. CONCLUSION

Because Plaintiff Jacob S. Jackson is a statutory employee of Defendant Eastman Chemical Company and Eastman had secured the payment of compensation for Jackson as required by the South Carolina Workers' Compensation Act, the court finds that Jackson's exclusive remedy against Eastman is pursuant to the South Carolina Workers' Compensation Act. Accordingly, for the reasons set forth above, the court hereby **GRANTS** Defendant Eastman Chemical Company's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules

---

[7] For example, the South Carolina Supreme Court clearly states in *Poch* that the responsibility for filing proof of compliance falls on the insurance carrier. 747 S.E.2d at 767. Plaintiffs incorrectly shift the burden to Eastman to show proof of compliance.

19

of Civil Procedure and **DISMISSES** the Complaint without prejudice.[8]  (ECF No. 53.)

    **IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 23, 2018
Columbia, South Carolina

---

[8] Generally, when a court grants a party's Rule 12(b)(1) motion to dismiss, the decision does not constitute a judgment on the merits, and is therefore without claim preclusive or res judicata effect.  *Farquhur v. United States*, C/A No. 1:07cv1033, 2007 WL 4233492, at *2 (E.D. Va. Nov. 28, 2007) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).  A determination that the exclusivity provision of the Workers' Compensation Act is applicable to a claim "should be deemed an adjudication rendered without prejudice to subsequent suit." *Zimmerman v. Coll. of Charleston*, C/A No. 2:12-505-DCN-BHH, 2012 WL 8899342, at *3 (D.S.C. Nov. 16, 2012).