# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Jacob S. Jackson, ) | Civil Action No.: 5:17-cv-01015-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Eastman Chemical Company and Mundy ) | |
| Maintenance Services and Operations, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Jacob S. Jackson filed this action alleging that he was injured as a result of the negligence of Defendants Eastman Chemical Company ("Eastman") and Mundy Maintenance Services and Operations, LLC ("Mundy") (together "Defendants"). (ECF No. 1.)

This matter is before the court by way of Mundy's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis that Jacob Jackson's claims are barred by the South Carolina Workers' Compensation Act (the "Act"), S.C. Code §§ 42-1-10 to -19-50 (2017), such that the Act is Jackson's exclusive remedy. (ECF No. 54.) Jackson opposes Mundy's Motion in its entirety. (ECF No. 59.) For the reasons set forth below, the court **DENIES** Mundy's Motion to Dismiss.

## I.  RELEVANT BACKGROUND TO PENDING MOTION

This case arises out of an industrial accident that occurred on December 6, 2016, at a chemical manufacturing facility (the "Facility") located "on the banks of the Congaree River near Sandy Run a few miles northeast of Gaston in Calhoun County, South Carolina." (ECF No. 58 at 2.) Eastman operated the Facility from 1967 until 20ll manufacturing polyethylene terephthalate ("PET"), a material "commonly used in soda bottles." (ECF No. 1 at 3 ¶¶ 9–11.) On January 31, 2011, Eastman sold specified parts of the Facility to DAK Americas, LLC

1

("DAK"), "a subsidiary of Alpek S.A.B. de C.V., a Mexican chemical manufacturing company." (*Id.* ¶ 11.) "DAK purchased . . . polymer and chemical manufacturing lines, certain on-site utilities and services to support such operations, but specifically excluded some retained facilities at the Plant." (ECF No. 58 at 3.) "Among the retained assets [of Eastman] were: 1,000 acres of land, six to ten buildings and four production lines out of thirteen which are making substantially similar products to those produced prior to the sale (the 'Retained Assets')." (*Id.* (citing ECF No. 78-1 at 29:14–30:25, 32:3–14, 53:1–25 & ECF No. 78-2 at 28:13–29:9, 53:3–15).) Additionally, "[w]hen Eastman sold the Facility to DAK, nearly all of Eastman's 400 employees at the site became DAK employees at the time of the sale and continued doing the same jobs." (ECF No. 53 at 4 (citing ECF No. 78-1 at 57:1–23).) As a result, DAK's employees "operate[d] and maintain[ed] Eastman's retained lines the same way that they did while they were employed by Eastman." (ECF No. 78-1 at 57:13–17.)

"Two contracts between Eastman and DAK memorialize that agreement." (ECF No. 53 at 5.) "First, under the Operating Agreement, Eastman pays DAK to provide its employees to operate the Eastman Retained lines, which generally run twenty-four hours a day." (*Id.* (referencing ECF No. 53-3).) "The operators report to supervisors within DAK's chain of command, and the DAK Area Manager serves as the liaison to Eastman." (*Id.*) "Second, there is a separate Services Agreement, under which Eastman pays DAK to provide, among other things, employees from DAK's maintenance department to perform maintenance and repairs on the Retained Lines." (*Id.* (referencing ECF No. 53-4).) "DAK's employees, including Plaintiff [Jackson], were Eastman's operations and maintenance workforce at the time of the Incident pursuant to the Operations Agreement and Services Agreement." (*Id.* at 6 (citations omitted).) As an operations and maintenance worker, Jacob Jackson did the same type of work for DAK

2

after the sale as he did for Eastman before the sale. (ECF No. 78-1 at 60:1–6.)

After purchasing the Facility, DAK contracted with Mundy to "provide[] maintenance services at the site." (ECF No. 78-2 at 126:19–20.) Mundy did not contract with Eastman nor was Mundy a party to the Operations Agreement and Services Agreement between Eastman and DAK. (*Id.* at 29:11–17, 126:4–12.) In this regard, there was no employment relationship between Mundy's employees and Eastman. (Id. at 29:18–30:21.) On December 3, 2016, employees of Mundy were asked "to heat a drain pipe [] near the [AC-11] Pump with a torch flame." (ECF No. 55 at 3.)

On December 6, 2016, Jackson, along with Alton Ray Zeigler and Kevin Vann, were assigned to perform preventative maintenance on line A, one of the four Eastman "Retained Asset" production lines, which involved draining the AC-11 loop to clean out any molten material and pulling/separating the AC-11 pump from its housing to replace a leaking seal. (ECF No. 78-1 at 109:5–11, 114:9–14, 115:7–15 & 135:2–24.) During the performance of this maintenance, Jackson was injured as "the result of an explosion which covered [] Jackson in the superheated chemical monomer and propelled an industrial pump, which weighs approximately 300 pounds, almost nine feet across a workspace before coming to rest as it put a hole in a cement block wall." (ECF No. 58 at 1.)

As a result of the foregoing, Jackson filed an action in this court on April 19, 2017, alleging claims against Eastman for negligence and negligent failure to warn and against Mundy for negligence. (ECF No. 1 at 8 ¶ 57–12 ¶ 75.) Additionally, Jackson alleged that he is entitled to an award of punitive and exemplary damages. (*Id.* at 12 ¶ 76–13 ¶ 79.) After engaging in court-ordered jurisdictional discovery with Jackson (*see* ECF No. 38 at 1 ¶ 2), Mundy filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction on November 30, 2017,

asserting that its employees and Jackson were "statutory employees" under the Act, the "codified fellow servant doctrine" prevents the suit, and Jackson's exclusive remedy is under the Act. (ECF No. 54.) In his December 21, 2017 Response in Opposition, Jackson expressly did not agree that Mundy's employees were Eastman's statutory employees for purposes of its Motion. (ECF No. 59.) In the alternative, Jackson argued that DAK's employees, including himself, were not fellow servants with Mundy's employees. (*Id.* at 16.)

The court heard argument from the parties regarding the instant Motion on January 9, 2018. (ECF No. 65.) At the hearing, counsel for Alton Ray Zeigler in a related case suggested during his presentation that the best evidence of an insurance policy that provides workers' compensation coverage "is to have an affidavit from the insurance company." (ECF No. 70 at 36:24–25.) Thereafter, on January 12, 2018, Eastman submitted the Declaration of David Kroll (ECF No. 66-1), the Assistant Vice President of Workers' Compensation Claims for ACE American Insurance Company ("Ace Insurance"). Kroll declared that:

> If a court determined that workers employed by DAK Americas, LLC were the statutory employees of Eastman Chemical Company under the applicable statutes and case law in South Carolina, and thus had claims under the South Carolina Workers' Compensation Act against Eastman Chemical Company, ACE American Insurance Company would respond and pay all benefits to which the workers were entitled under the policy in accordance with the laws of South Carolina.

(*Id.* at 3 ¶ 12.) In response to an Objection to and Motion to Exclude Kroll's Declaration (ECF No. 72) filed by Jackson on January 23, 2018, the court entered a Text Order (ECF No. 97) on May 21, 2018, that "allow[ed] the parties sixty (60) days, or until July 20, 2018, to conduct the following discovery:" (1) service of appropriate discovery on Ace Insurance and (2) the deposition of Kroll. (*Id.*) After the parties conducted this additional limited discovery, they filed supplemental briefs between October 2–4, 2018. (*See* ECF Nos. 108, 109, 110.)

4

## II. LEGAL STANDARD

A. <u>Rule 12(b)(1) Motions to Dismiss Generally</u>

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "cases" and "controversies." U.S. Const. art. III, § 2. "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted). The plaintiff bears the burden of proof on questions of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

Normally, this court would have jurisdiction over the instant matter under 28 U.S.C. § 1332(a)(1) because the minimum requirements of diversity are met.[1] However, "[t]he essence of diversity jurisdiction is that a federal court enforces State law and State policy." *Angel v.*

---

[1] Jackson alleges that there is complete diversity of citizenship between him and Defendants and the amount in controversy herein exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs. (ECF No. 1 at 2 ¶ 4.) More specifically, Eastman is a corporation organized under the laws of Delaware with its principal place of business in Kingsport, Tennessee. (ECF No. 1 at 1 ¶ 2.) Mundy is a corporation organized under the laws of Texas with its principal place of business in Houston, Texas. (*Id.* at 2 ¶ 3.) Jackson is a citizen and resident of Calhoun County, South Carolina. (*Id.* ¶ 1.) Moreover, the amount in controversy exceeds $75,000.00 based on Plaintiffs' representation. (*Id.* at 2 ¶ 4.)

*Bullington*, 330 U.S. 183, 191 (1947) (federal court sitting in diversity case could not grant deficiency judgment barred by North Carolina statute). "Thus, there are cases where, even if diversity of citizenship exists, a federal court 'will not take jurisdiction [ ] unless the plaintiff has asserted a claim cognizable in the state courts.'" *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3602, at 375 (2d ed. 1984); *see also Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980) (finding that South Carolina "door-closing" statute deprived federal court of jurisdiction). Accordingly, if an exclusive remedy provision applies, the district court should treat the issue as one falling under the province of a 12(b)(1) dismissal, rather than a dismissal for failure to state a claim upon which relief can be granted. *E.g., Banks v. Va. Elec. & Power Co.*, 205 F.3d 1332, at *2 (4th Cir. Feb. 17, 2000) (affirming district court's dismissal under Rule 12(b)(1) and "find[ing] no merit to plaintiff's contention that the district court improperly utilized Rule 12(b)(1) to dismiss his action"); *Lentine v. 3M Co.*, C/A No. 6:08-2542-HMH, 2009 WL 792495, at *2 (D.S.C. Mar. 23, 2009) ("The determination of whether a worker is a statutory employee is jurisdictional and a question of law." (citing *Posey v. Proper Mold & Eng'g, Inc.*, 661 S.E.2d 395, 398 (S.C. Ct. App. 2008))); *Adams v. Davison-Paxon Co.*, 96 S.E.2d 566, 571 (S.C. 1957) ("It has been consistently held that whether the claim of an injured workman is within the jurisdiction of the Industrial Commission is a matter of law for decision by the court, which includes the finding of the facts which relate to jurisdiction." (citations omitted)); *Poch v. Bayshore Concrete Prods./S.C., Inc.*, 686 S.E.2d 689, 694 (S.C. Ct. App. 2009) ("The General Assembly has vested the South Carolina Workers' Compensation Commission with exclusive original jurisdiction over an employee's work-related injuries." (citing *Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C.

2002))); *Voss v. Ramco, Inc.*, 482 S.E.2d 582, 584 (S.C. Ct. App. 1997) (observing that the statutory employee determination is jurisdictional (citing, *e.g.*, *Adams*, 96 S.E.2d at 571)).

B. <u>Statutory Employers and Employees</u>

The Act "contains an 'exclusivity provision.'" *Poch*, 686 S.E.2d at 694 (citing *Edens v. Bellini*, 597 S.E.2d 863, 867 (S.C. Ct. App. 2004)). "This exclusivity provision states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.
>
> Provided, however, this limitation of actions shall not apply to injuries resulting from acts of a subcontractor of the employer or his employees or bar actions by an employee of one subcontractor against another subcontractor or his employees when both subcontractors are hired by a common employer.

*Poch v. Bayshore Concrete Prods./S.C., Inc.*, 747 S.E.2d 757, 761 (S.C. 2013) (quoting S.C. Code Ann. § 42-1-540 (1985)). "The exclusivity provision of the Act applies both to 'direct' employees and to those termed 'statutory employees' under § 42-1-400." *Id.* (quoting *Edens*, 597 S.E.2d at 869). Pursuant to the exclusivity provision, "[a] statutory employee may not maintain a [] [tort] action against his direct employer or his statutory employer [for a work related accident or injury]; rather, the [statutory] employee's sole remedy for work-related injuries is under the Act."[2] *Maloney v. Landmark Tours & Travel, Inc.*, C/A No. 9:10-0725-

---

[2] Statutory employee is defined by S.C. Code Ann. § 42-1-400 (1962). Section 42-1-400 provides as follows:

> When any person, . . . referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (. . . referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

MBS, 2011 WL 1526731, at *2 (D.S.C. Apr. 19, 2011) (citing *Hancock v. Wal–Mart Stores, Inc.*, 584 S.E.2d 398, 400 (S.C. Ct. App. 2003)); *see also* S.C. Code Ann. § 42-1-540 (1985).

Three tests are applied to determine whether the activity of a worker is sufficient to make him a statutory employee of the owner or upstream employer within the contemplation of the Act: "(1) is the activity an important part of the owner's business or trade; (2) is the activity a necessary, essential, and integral part of the owner's trade, business, or occupation; or (3) has the identical activity previously been performed by the owner's employees?" *Edens*, 597 S.E.2d at 868. "If the activity at issue meets even one of these three criteria, the worker qualifies as the statutory employee of the owner." *Id.* "Since no easily applied formula can be laid down for determining whether work in a particular case meets these tests, each case must be decided on its own facts." *Glass v. Dow Chem. Co.*, 482 S.E.2d 49, 51 (S.C. 1997). "Any doubts as to a worker's status should be resolved in favor of including him or her under the Worker's Compensation Act." *Poch*, 747 S.E.2d at 761 (quoting *Posey*, 661 S.E.2d at 400).

### III.   ANALYSIS

The instant dispute between the parties presents three questions for the court's consideration: (1) were Mundy's employees on December 3, 2016, and Jacob Jackson, on December 6, 2016, statutory employees of Eastman; (2) were Mundy's employees and Jacob Jackson fellow servants; and (3) was Eastman special employer to Mundy's employees? The court addresses each question separately below. The court addresses each question separately below.

---

*Id.*

A.   Statutory Employee

   *1. The Parties' Arguments*

Mundy asserts when its employees heated the drain pipe near the AC-11 pump on December 3, 2016, three days prior to the accident that injured Jacob Jackson, they were acting outside of any contractual relationship involving Mundy and were performing as statutory/borrowed employees of Eastman. (ECF No. 55 at 5, 7.) Mundy asserts that its "employees, in heating the Eastman Drain Pipe in an attempt to release polymer from the subject Eastman Line, qualified as Eastman's statutory employees as they were performing work on Eastman equipment and that work clearly was a part of Eastman's 'trade or business.'" (*Id.* at 9.) Mundy further asserts that Jacob Jackson "also was Eastman's statutory employee at the time of the accident as he, in removing the Pump, was performing a necessary, essential, and integral function for Eastman, under Eastman's control, which previously had performed all of its own annual maintenance, including Pump removal, itself." (*Id.* at 13.)

Jackson challenges Mundy's assertions first arguing that it is a proper Defendant in this matter because its employees were "third-party tortfeasors who injure[d] an employee acting within the course and scope of his employment." (ECF No. 59 at 11 (citing *Fuller v. Blanchard*, 595 S.E.2d 831, 834 (S.C. Ct. App. 2004)).) Jackson argues that neither he nor Mundy's employees were statutory/borrowed employees[3] of Eastman because "[t]he work Mundy was

---

[3] Jackson asserts that the statutory employee issue "is a question of fact to be determined by a jury, not a judge." (ECF No. 59 at 10 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958)).) Despite Jackson's protestations, this court can decide a statutory employee issue for reasons stated as follows:

> The determination of whether or not [plaintiff][] is a statutory employee of [defendant][] is a question of subject matter jurisdiction. *Carter v. Florentine Corp.*, 423 S.E.2d 112, n.1 (1992); *McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890, 892 (1991). Every court has the power and duty to determine whether or not it has jurisdiction of a cause presented to it for determination, including the power

performing on December 3, 2016 was not a part of Eastman's business, it was not an important part of Eastman's business, it was not necessary, essential, and integral to Eastman's business, and it had not previously been performed by Eastman's employees." (ECF No. 59 at 14.) Jackson further argues that Mundy's employees were not borrowed by Eastman because (1) Mundy did "not have a contractual relationship with Eastman," (2) "there is no evidence of Eastman having control over Mundy's employees" and (3) "the subject work was not work that was part of Eastman's business or trade." (*Id.* at 15 (citing *DeBerry v. Coker Freight Lines*, 108 S.E.2d 114 (S.C. 1959) (setting forth a three part test of 1) a contract of hire, express or implied, with the special employer; 2) the work being done is essentially that of the special employer; and 3) the special employer has the right to control the details of the work.)).)

2. *The Court's Review*

Mundy argues that its employees and Jacob Jackson were statutory co-employees of Eastman. To determine whether Jacob Jackson and Mundy's employees were statutory co-

---

to decide all questions, whether of law or fact, which are necessary to determining jurisdiction. *See Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 132 S.E.2d 18, 21–22 (1963). "It is recognized that in federal court the question of a company's trade, business or occupation is often one of fact for the jury." *Singleton v. J.P. Stevens & Co.*, 533 F. Supp. 887, 888 (D.S.C. 1982), *aff'd*, 726 F.2d 1011 (4th Cir. 1984), citing *Byrd v. Blue Ridge Rural Electric Coop.*, 356 U.S. 525, 78 S. Ct. 893, 2 L.Ed.2d 953 (1958). *Byrd*, however, "does not stand for the proposition that if there is no issue genuinely in dispute, the question of employment status must be nevertheless submitted to a jury." *Id.* Jurisdictional questions present issues for the determination of the court and not a jury. *Bargesser v. Coleman Co.*, 230 S.C. 562, 96 S.E.2d 825, 827 (1957). The Fourth Circuit Court of Appeals in *Walker v. United States Gypsum Co.*, 270 F.2d 857 (4th Cir. 1959), *cert. denied*, 363 U.S. 805, 80 S. Ct. 1240, 4 L.Ed.2d 1148 (1960), stated that the matter of employment status, and whether jurisdiction lies with the Workers' Compensation Commission or the courts is a question peculiarly appropriate for summary judgment when there is no disputed genuine issue of fact. *Id.* at 860–61.

*Carrier v. Westvaco Corp.*, 806 F. Supp. 1242, 1244–45 (D.S.C. 1992).

employees of Eastman on the dates in question, the court considered the parties' evidence concerning Eastman's general trade, business, or occupation. *See Poch*, 747 S.E.2d at 761 ("[T]his Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence." (citation omitted)). Upon its review, the court observes that the parties dispute what is Eastman's business, trade, or occupation. Eastman asserts that it is in the business of producing specialty chemicals. (ECF No. 78-1 at 22:21–23; ECF No. 78-2 at 31:10–13, 166:19–167:4.) Jackson asserts that Eastman is "a chemical product sales company, selling chemicals produced by DAK employees on equipment owned by Eastman" because it "does not receive the raw materials, does not have any employees capable of running the operations of the lines, does not remove the product from the line, and does not place the product into shipping containers." (ECF No. 59 at 23 (citing ECF No. 78-2 at 92:15–93:19)). Despite the parties' contrasting positions, there is no dispute of fact that Eastman's business requires the presence of chemical product and without such chemical product, Eastman cannot sell or produce anything. Moreover, caselaw does not necessarily require that such product be exclusively produced by Eastman's employees. *See Singleton v. J.P. Stevens & Co., Inc.*, 533 F. Supp. 887, 890 (D.S.C. 1982) ("[A] person is performing the trade, business or occupation of the employer if the person contracts with the owner to perform a duty which is essential to the function of the owner's continued business despite the fact the owner may never have performed the same chore with his own employees." (citations omitted)).

There is no dispute of fact that Mundy's employees and Jackson were performing preventative maintenance on one of the lines that produces chemicals for Eastman. (ECF No. 78-1 at 112:2–117:2.) The appellate courts of South Carolina have held that maintenance considerations are an important part of a statutory employer's trade, business, or occupation. In

*Marchbanks v. Duke Power Co.*, 2 S.E.2d 825 (S.C. 1939), "the [South Carolina Supreme] Court found that an independent contractor who was hired to paint telephone poles on behalf of Duke Power was a statutory employee under the Workmen's Compensation Law on the basis that Marchbanks was engaged in part of the defendant's business, because the maintenance of utility poles was necessary to the distribution of electricity." *Singleton*, 533 F. Supp. at 890 (citing *Marchbanks*, 2 S.E.2d at 837). In *Boseman v. Pac. Mills*, 79, 8 S.E.2d 878, (S.C. 1940), the South Carolina Supreme Court stated as follows in finding that the maintenance of the water tank was an integral part of the mill's business for fire prevention purposes:

> The tank was an integral part of the mill business. There was also testimony to the effect that the mill desired that the work on the inside of the tank be completed as soon as possible so that its every day, ordinary service, that of fire protection, could be resumed, it being shown that the mill depended upon this tank for such protection. The very nature of the work done by the mill, that of the manufacture of cotton into cloth, especially required the best of protection against fire. Hence, this tank was particularly necessary and essential in the operation and carrying on of the business of the mill. It, therefore, follows that the painting of the tank was such a part of the trade, business or occupation of the Pacific Mills as would constitute Martin a subcontractor and thus render the mill liable to the beneficiary of Boseman for payment of compensation.

*Id.* at 880. In *Bridges v. Wyandotte Worsted Co.*, 132 S.E.2d 18 (S.C. 1963), the Supreme Court of South Carolina again held that maintenance was part of the trade, business, or occupation of the statutory employer:

> In the present case, the defendant was engaged in the manufacture of woolen goods. Its machinery was operated by electricity derived in part from its own hydro-electric plant and in part by purchase from Duke Power Company. The work here involved was the repair or replacement of the transmission line owned by the defendant and located on its property, over which electric current, necessary for the operation of its business, was brought into its plant from Duke Power Company. These lines had been replaced on a previous occasion, and customarily maintained, by a qualified crew regularly employed by the defendant. Because the regular employees of the defendant had been overworked and needed rest, the defendant contracted with Collins Electric Company, plaintiff's employer, to make the needed replacements on its transmission lines. The replacement of the lines was made necessary by an overload placed upon them by the addition of machinery in defendant's mill. It is reasonably inferable from the

12

> record that the work of replacing the transmission lines in question was [] an unusual or extraordinary undertaking, but one customarily done by defendant's employees who were maintained for such purposes. The maintenance and repair of its electrical system was, therefore, made a part of the work done by the defendant in the prosecution of its business of manufacturing woolen goods.

*Id.* at 23.

Therefore, upon consideration of the foregoing caselaw in the context of the facts presented by the parties, the court is persuaded that maintenance on a line that produces chemicals that Eastman sells is an important part of Eastman's trade, business, or occupation. *E.g.*, *Singleton*, 533 F. Supp. at 891 ("The continued maintenance and repair of these electrical lines were absolutely essential to the continued operation of the textile plant."). Accordingly, the court finds that Mundy's employees on December 3, 2016, and Jacob Jackson on December 6, 2016, were statutory co-employees of Eastman.[4]

B. <u>Fellow Servant and Borrowed Servant Doctrines</u>

   *1. The Parties' Arguments*

As a result of the finding that Jacob Jackson and its employees were statutory co-employees of Eastman, Mundy argues that it is not liable for Jackson's injuries because the Act's "codified fellow servant doctrine" prevents Jackson from suing statutory co-employees who negligently injured him while acting in the scope of their statutory employment. (ECF No. 54 at 13 (citing, *e.g.*, *Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 702 (S.C. 1993)).) Alternatively, Mundy argues that even if its workers were not fellow servants with Jackson, his injuries were caused by "special employees of Eastman and master servant liability should not be imposed on

---

[4] "An activity needs to meet just one of the three tests outlined in *Edens* for an employee to be a statutory employee under the" Act. *Jarman v. Beaufort-Jasper Water & Sewer Auth.*, No. 9:15-cv-00356-DCN, 2017 WL 1881330, at *3 n.2 (D.S.C. May 9, 2017) (citing *Edens*, 597 S.E.2d at 868). Because the court finds that Jackson was a statutory employee of Eastman since the maintenance work he was performing at his death was an important part of Eastman's trade, business, or occupation, the court is not required to address the second or third statutory employee tests outlined in *Edens*.

those employees' general employer, Mundy." (*Id.* at 17–18.)

In response to the foregoing, Jackson argues that because DAK did not have the right to control the performance of Mundy's workers, he as an employee of DAK was not fellow servants with Mundy's employees. (ECF No. 59 at 16.)

*2. The Court's Review*

Mundy argues that it is not liable under a respondeat superior theory for any alleged negligence occurring on December 3, 2016, by its direct employees. "[T]he fellow servant doctrine exempts the employer from liability for injuries caused to an employee by the negligence of a co[-]employee." *Game v. Atl. Coast Line R. Co.*, 30 S.E.2d 33, 34 (S.C. 1944) (quoting 35 Am. Jur. 770); *see also Nordgren v. Burlington N. R. Co.*, 101 F.3d 1246, 1249 (8th Cir. 1996) ("Under the fellow-servant rule, '[a] master is not liable for personal injuries occasioned to one servant by the tort of a fellow-servant employed in the same common service, unless (1) the fellow-servant is acting as a deputy-master or vice-principal, or (2) the master has negligently selected an incompetent fellow servant, or negligently retained one, or (3) by statute the master is made liable to one servant for the wrongful act or default of a fellow-servant.'" (quoting Ernest W. Huffcut, *The Law of Agency*, ch. XXIV, § 271 at 331 (2d ed. 1901))). The Act extends this employer immunity to statutory co-employees conducting a statutory employer's business:

> Every employer who accepts the compensation provisions of this title shall secure the payment of compensation to his employees in the manner provided in this chapter. While such security remains in force he or **those conducting his business**[5] shall only be liable to any employee who elects to come under this title for personal injury or death by accident to the extent and in the manner specified in this title.

---

[5] "The phrase 'those conducting his business' was defined in *Nolan v. Daley, supra,* as 'any person who, as an employee of a covered employer, was performing any work incident to the employer's business, regardless of whether employed in a menial, supervisory or managerial capacity.'" *Parker v. Williams & Madjanik*, 239 S.E.2d 487, 489 (S.C. 1977)

14

S.C. Code Ann. § 42-5-10 (1985) (emphasis added).

In *Nolan v. Daley*, 73 S.E.2d 449 (S.C. 1952), the South Carolina Supreme Court held that the Act "precludes a common law action for damages by an employee under the act against a co-employee based on the latter's negligence during the course of their employment." *Powers v. Powers*, 123 S.E.2d 646, 647 (S.C. 1962) (citing *Nolan*). In subsequent decisions, the South Carolina Supreme Court observed the following regarding the *Nolan* holding:

> Neither the degree of fault of the negligent employee, nor the particular method used at the time to perform the work, is determinative of whether an action may be maintained against him by an injured co-employee. It was held in *Nolan v. Daley* that 'an employee, subject with his employer to the provisions of the Workmen's Compensation Act of this state, whose injury arises out of, and in the course of his employment, cannot maintain an action at common law against his co-employee, whose negligence caused the injury.' The test is: Did the injury to the employee arise out of, and in the course of his employment? If it did, he cannot maintain an action at common law against his fellow employee whose negligence caused his injury.

*Powers*, 123 S.E.2d at 647.

> [A] fellow employee is not exempt from common law liability by virtue of Section 42-5-10 "unless at the time of the delict, the employee so exempted was performing work incident to the employer's business under circumstances which, in the absence of an applicable common law defense, would have rendered the employer liable at common law, for the acts of the employee under the doctrine of respondeat superior." *Williams v. Bebbington*, 247 S.C. 260, 146 S.E.2d 853, 855-856 (1966); *Boykin v. Prioleau*, 255 S.C. 437, 179 S.E.2d 599, 600 (1971).

*Parker*, 239 S.E.2d at 488.

Considering the foregoing, there is no question that the fellow servant rule exempts Eastman and Mundy's employees from liability for Jacob Jackson's injuries because they are all statutory co-employees of Eastman. However, it is less clear whether that exemption flows to Mundy because it did not have a statutory employment relationship with Jackson. Regarding this conundrum, the South Carolina Supreme Court has observed that "[t]o make out the case for the application of the fellow servant rule the injured person must, of course, have been a servant

15

of the defendant." *Webster v. Atl. Coast Line R. Co.*, 61 S.E. 1080, 1085 (S.C. 1908). "It is a self–evident proposition that persons are not fellow servants within the rule exempting a master for liability to one servant for the negligence of another, unless they are in the employ or at least under the control of the same master." *Id.* Upon its review, the court finds that the evidence presented regarding Mundy's relationship with Jacob Jackson does not support a finding that Mundy should be exempted from liability pursuant to the fellow servant doctrine.

As to Mundy's assertion that Jacob Jackson's injuries were caused by special employees of Eastman, the borrowed servant doctrine provides that "when a general employer lends an employee to a special employer, that special employer is liable for workers' compensation if: (1) there is a contract of hire between the employee and the special employer; (2) the work being done by the employee is essentially that of the special employer; and (3) the special employer has the right to control the details of the employee's work." *Cooke v. Palmetto Health All.*, 624 S.E.2d 439, 443 (S.C. Ct. App. 2005) (citing *Eaddy v. A.J. Metler Hauling & Rigging Co.*, 325 S.E.2d 581, 582–83 (S.C. Ct. App. 1985)). Because Mundy did not contract with Eastman nor was Mundy a party to the Operations Agreement and Services Agreement between Eastman and DAK (*see* ECF No. 78-2 at 29:11–17, 126:4–12), Mundy is unable to demonstrate that there was a "contract of hire" between its employees and Eastman, as the alleged special employer. Therefore, the court finds that Mundy is unable to satisfy all of the elements of the borrowed servant doctrine to exempt itself from liability in this action.

## IV. CONCLUSION

For the reasons set forth above, the court hereby **DENIES** Defendant Mundy Maintenance Services and Operations, LLC's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 54.)

**IT IS SO ORDERED.**

_J. Michelle Childs_
United States District Judge

October 23, 2018
Columbia, South Carolina