IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Jacob S. Jackson, ) | Civil Action No.: 5:17-cv-01015-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Eastman Chemical Company and Mundy ) | |
| Maintenance Services and Operations, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Jacob S. Jackson filed this action alleging that he was injured as a result of the negligence of Defendants Eastman Chemical Company ("Eastman") and Mundy Maintenance Services and Operations, LLC ("Mundy") (together "Defendants"). (ECF No. 1.)

This matter is before the court on Mundy's Motion for Reconsideration (ECF No. 122) of the Order entered on October 23, 2018 (the "October Order"), denying Mundy's Motion to Dismiss (ECF No. 54). (ECF No. 113 at 16.) Jackson opposes Mundy's Motion asserting that the October Order "is well founded, comports with the facts of the case, appropriately applies established law, and did not 'clearly err[]' in its holding." (ECF No. 123 at 1.) For the reasons set forth below, the court **GRANTS IN PART** Mundy's Motion for Reconsideration and **DISMISSES** the claims against it.

I.       RELEVANT BACKGROUND TO PENDING MOTION

This case arises out of an industrial accident that occurred on December 6, 2016, at a chemical manufacturing facility (the "Facility") located "on the banks of the Congaree River near Sandy Run a few miles northeast of Gaston in Calhoun County, South Carolina." (ECF No. 58 at 2.) Eastman operated the Facility from 1967 until 20ll manufacturing polyethylene terephthalate ("PET"), a material "commonly used in soda bottles." (ECF No. 1 at 3 ¶¶ 9–11.)

On January 31, 2011, Eastman sold specified parts of the Facility to DAK Americas, LLC ("DAK"), "a subsidiary of Alpek S.A.B. de C.V., a Mexican chemical manufacturing company." (*Id.* ¶ 11.) "DAK purchased . . . polymer and chemical manufacturing lines, certain on-site utilities and services to support such operations, but specifically excluded some retained facilities at the Plant." (ECF No. 58 at 3.) "Among the retained assets [of Eastman] were: 1,000 acres of land, six to ten buildings and four production lines out of thirteen which are making substantially similar products to those produced prior to the sale (the 'Retained Assets')." (*Id.* (citing ECF No. 78-1 at 29:14–30:25, 32:3–14, 53:1–25 & ECF No. 78-2 at 28:13–29:9, 53:3–15).) Additionally, "[w]hen Eastman sold the Facility to DAK, nearly all of Eastman's 400 employees at the site became DAK employees at the time of the sale and continued doing the same jobs." (ECF No. 53 at 4 (citing ECF No. 78-1 at 57:1–23).) As a result, DAK's employees "operate[d] and maintain[ed] Eastman's retained lines the same way that they did while they were employed by Eastman." (ECF No. 78-1 at 57:13–17.)

After purchasing the Facility, DAK contracted with Mundy to "provide[] maintenance services at the site." (ECF No. 78-2 at 126:19–20.) Mundy did not contract with Eastman nor was Mundy a party to the Operations Agreement and Services Agreement between Eastman and DAK. (*Id.* at 29:11–17, 126:4–12.) In this regard, there was no employment relationship between Mundy's employees and Eastman. (*Id.* at 29:18–30:21.)

On December 6, 2016, Jackson, along with DAK co-workers, Kevin Vann and Alton Ray Zeigler, were assigned to perform preventative maintenance on line A, one of the four Eastman "Retained Asset" production lines, which involved draining the AC-11 loop to clean out any molten material and pulling/separating the AC-11 pump from its housing to replace a leaking seal. (ECF No. 78-1 at 109:5–11, 114:9–14, 115:7–15 & 135:2–24.) During the performance of

this maintenance, Jackson was injured as "the result of an explosion which covered [] Jackson in the superheated chemical monomer and propelled an industrial pump, which weighs approximately 300 pounds, almost nine feet across a workspace before coming to rest as it put a hole in a cement block wall." (ECF No. 58 at 1.)

As a result of the foregoing, Jackson filed an action in this court on April 19, 2017, alleging claims against Eastman for negligence and negligent failure to warn and against Mundy for negligence. (ECF No. 1 at 8 ¶ 57–12 ¶ 75.) Additionally, Jackson alleged that he is entitled to an award of punitive and exemplary damages. (*Id.* at 12 ¶ 76–13 ¶ 79.) After engaging in court-ordered jurisdictional discovery with Jackson (*see* ECF No. 38 at 1 ¶ 2), Mundy filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on November 30, 2017, asserting that its employees and Jackson were "statutory employees" under the South Carolina Workers' Compensation Act (the "Act"), S.C. Code §§ 42-1-10 to -19-50 (2017), the "codified fellow servant doctrine" prevents the suit, and Jackson's exclusive remedy is under the Act. (ECF No. 54.) Thereafter, the court entered the October Order denying Mundy's Motion to Dismiss. (ECF No. 113.) On December 26, 2018, Mundy filed the instant Motion for Reconsideration. (ECF No. 122.)

## II. LEGAL STANDARD AND ANALYSIS

In the October Order, the court made the following observations in denying Mundy's Motion to Dismiss (ECF No. 54) the claims alleged against it:

> [T]here is no question that the fellow servant rule exempts Eastman and Mundy's employees from liability for Jacob Jackson's injuries because they are all statutory co-employees of Eastman. However, it is less clear whether that exemption flows to Mundy because it did not have a statutory employment relationship with Jackson. Regarding this conundrum, the South Carolina Supreme Court has observed that "[t]o make out the case for the application of the fellow servant rule the injured person must, of course, have been a servant of the defendant." *Webster v. Atl. Coast Line R. Co.*, 61 S.E. 1080, 1085 (S.C. 1908).

3

> "It is a self–evident proposition that persons are not fellow servants within the rule exempting a master for liability to one servant for the negligence of another, unless they are in the employ or at least under the control of the same master." *Id.* Upon its review, the court finds that the evidence presented regarding Mundy's relationship with Jacob Jackson does not support a finding that Mundy should be exempted from liability pursuant to the fellow servant doctrine.
>
> As to Mundy's assertion that Jacob Jackson's injuries were caused by special employees of Eastman, the borrowed servant doctrine provides that "when a general employer lends an employee to a special employer, that special employer is liable for workers' compensation if: (1) there is a contract of hire between the employee and the special employer; (2) the work being done by the employee is essentially that of the special employer; and (3) the special employer has the right to control the details of the employee's work." *Cooke v. Palmetto Health All.*, 624 S.E.2d 439, 443 (S.C. Ct. App. 2005) (citing *Eaddy v. A.J. Metler Hauling & Rigging Co.*, 325 S.E.2d 581, 582–83 (S.C. Ct. App. 1985)). Because Mundy did not contract with Eastman nor was Mundy a party to the Operations Agreement and Services Agreement between Eastman and DAK (*see* ECF No. 78-2 at 29:11–17, 126:4–12), Mundy is unable to demonstrate that there was a "contract of hire" between its employees and Eastman, as the alleged special employer. Therefore, the court finds that Mundy is unable to satisfy all of the elements of the borrowed servant doctrine to exempt itself from liability in this action.

(ECF No. 113 at 15–16.)

Mundy seeks reconsideration of the October Order pursuant to Rule 54. (ECF No. 122 at 1.) Rule 54(b) provides the following:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Moses H.*

4

*Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, but has held motions under Rule 54(b) are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n*, 326 F.3d at 514; *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance. *See U.S. Home Corp. v. Settlers Crossing, LLC*, C/A No. DKC 08-1863, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); *R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co.*, C/A No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005). Therefore, reconsideration under Rule 54 is appropriate on the following grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, C/A No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an[] interlocutory order.") (citing *Am. Canoe Ass'n*, 326 F.3d at 514).

A.  <u>The Parties' Arguments</u>

In its Motion for Reconsideration, Mundy asserts that the court "clearly erred [in the October Order] in holding that: (1) Mundy is not immune from liability to Plaintiff by virtue of . . . []the Act[]; (2) the borrowed servant doctrine is inapplicable; and (3) Mundy could be liable

for acts of Eastman[]'s [] statutory employees who were not acting in furtherance of Mundy's business." (ECF No. 122 at 1.) In support of its immunity, Mundy argues that the South Carolina Supreme Court's opinion in *Parker v. Williams & Madjanik, Inc.*, is dispositive standing for the proposition that "if the defendant's W2 employee is 'immune from suit' under 'Section 42-5-10 as a co-employee of the deceased,' then the W2 employer 'is likewise relieved of its vicarious liability.'" (ECF No. 122 at 5 (quoting *Parker*, 239 S.E.2d 487, 488–89 (S.C. 1977)).) Therefore, Mundy asserts that the October Order contains clear error "[b]ecause this [c]ourt already has determined that the Mundy employees are exempt from any liability to Plaintiff, then Mundy 'is likewise relieved of its vicarious liability' for those employees' same actions." (*Id.* at 7 (citing *Parker*).)

Mundy next argues the court erroneously applied the borrowed servant doctrine because it "only requires a contract between the workers and Eastman" and "such a contract may be implied." (*Id.* at 8 (citing *Cooke v. Palmetto Health All.*, 624 S.E.2d 439, 443 (S.C. Ct. App. 2005) (noting that the borrowed servant doctrine requires "a contract of hire between the employee and the special employer"); *Weitzman v. United States*, No. 1:17CV82, 2018 WL 2291318, at *5 (M.D.N.C. May 18, 2018) (Explaining the elements of the borrowed servant doctrine as including a "contract of hire, express or implied" between the employee and the special employer)).) Based on the foregoing law, Mundy asserts that the court erred because "an implied contract for hire necessarily is embedded in that statutory employment relationship." (*Id.* at 9.)

Finally, Mundy argues that the court clearly erred in the October Order by "holding that Mundy could be vicariously liable for the alleged wrongdoing of workers whom this [c]ourt found distinctly were acting in the course of their statutory employment with Eastman at the time

6

of the alleged negligence." (ECF No. 122 at 10.) Mundy asserts that "[a]s a result, under South Carolina law's doctrine of respondeat superior, Mundy is not liable for such negligence." (*Id.* (citing *Allen v. Greenville Hotel Partners, Inc.*, Nos. 6:04-2327-HMH, 6:04-1260-HMH; 6:04-2328-HMH; 6:05-2142-HMH, 2006 WL 1817804, at *3 (D.S.C. June 30, 2006) (Under South Carolina law, an employer is liable under the doctrine of respondeat superior for "injuries caused by the tort of his servant committed within the scope of the servant's employment"); *Hoskins v. King*, 676 F. Supp. 2d 441, 445–46 (D.S.C. 2009) ("In order to establish liability under respondeat superior, a plaintiff must establish that the servant was acting about the master's business and within the scope of her employment")).)

Jackson opposes the Motion for Reconsideration asserting that Mundy misinterprets the *Parker* decision because its holding "relies upon the status of defendant's control over the injured person to determine if the defendant is immune." (ECF No. 123 at 1 (citing *Parker*, 239 S.E.2d at 488–89).) Therefore, because "there is no evidence, or suggestion, that Mundy exerted any control over Mr. Jackson," the court was correct in its conclusion that Mundy was not de facto immune because its employees were statutory co-employees of Jackson. (*Id.* at 1–2.) In this regard, Jackson argues that "[t]o reach the conclusion argued for by Mundy would require the [c]ourt to construe the pleadings in a manner most favorable to the Defendant without a record illustrating that scenario." (*Id.* at 2.)

B.  The Court's Review

In the instant Motion, Mundy seeks reconsideration of the October Order because it "contains clear errors of South Carolina law" in the interpretation of the fellow servant and borrowed servant doctrines. (ECF No. 122 at 13.) At the outset of this review, the court acknowledges that "[a]s a federal court sitting in diversity, [][it has] an obligation to apply the

7

jurisprudence of South Carolina's highest court, the South Carolina Supreme Court." *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002).

 1. *Fellow Servants*

The court first considers Mundy's argument that when its direct employees were found by the court to be fellow servants of Jackson and exempt from liability as statutory employees of Eastman (*see* ECF No. 113 at 15), that finding should have also derivatively exempted Mundy from liability because its own liability under respondeat superior is premised on the liability of its direct employees. As support for its position, Mundy cites to the aforementioned *Parker* decision and *Smalls v. Coreas*, Appellate Case No. 2011-196106, 2013 WL 8507830 (S.C. Ct. App. Mar. 27, 2013), an unpublished opinion of the South Carolina Court of Appeals. In the October Order, the court found that it could not clearly determine from the current record whether the immunity from liability of Mundy's employees "flows to Mundy because it did not have a statutory relationship with Jackson." (ECF No. 113 at 15.) After considering the specific language of *Parker*[1] and *Smalls*[2] cited by Mundy, the court cannot avoid the conclusion that in South Carolina, the Act's tort immunity protects an employer from liability when its direct employee injures a fellow servant of their statutory employer.[3] *But see* Restatement (Second) of

---

[1] "In order for the crane operator to be immune from suit under Section 42-5-10 as a co-employee of the deceased, he must have been engaged in a course of conduct at the time of the delict that would have rendered Yetter Homes liable at common law under the doctrine of respondeat superior." *Parker*, 239 S.E.2d at 488–89. "If the operator is immune from suit, then [his direct employer] Ansley and Sutton is likewise relieved of its vicarious liability." *Id.*

[2] "To the extent that Smalls' complaint may be interpreted to assert Hightrak's vicarious liability for [its employee] Coreas' alleged negligence, such a claim is barred by section 42-5-10 of the South Carolina Code (1985), which provides that an employee who negligently injures another employee while in the scope of employment is immune from personal liability." *Smalls*, 2013 WL 8507830, at 2.

[3] Before adoption of the Act, the fellow servant doctrine "barred or reduced the amount of money an injured employee could recover against an employer if an injury was caused solely by the negligence of a fellow worker." *Fellow Servant Rule Law and Legal Definition*, USLegal, https://definitions.uslegal.com/f/fellow-servant-rule/ (last visited May 8, 2019). However, since

8

Agency § 217 (1958) ("In an action against a principal based on the conduct of a servant in the course of employment: . . . (b) The principal has no defense because of the fact that: . . . (ii) the agent had an immunity from civil liability as to the act."). Accordingly, Mundy is entitled to reconsideration of the October Order.

### 2. *Borrowed Servants*

The court also considers Mundy's argument that it cannot be held vicariously liable for injuries caused by its direct employees because those individuals qualified as borrowed servants of Eastman. In the October Order, the court concluded that Mundy failed to satisfy the borrowed servant test adopted by the appellate courts of South Carolina because "there was [not] a 'contract of hire' between its employees and Eastman, as the alleged special employer." (ECF No. 113 at 16 ("[W]hen a general employer lends an employee to a special employer, that special employer is liable for workers' compensation if: (1) there is a contract of hire between the employee and the special employer; (2) the work being done by the employee is essentially that of the special employer; and (3) the special employer has the right to control the details of the employee's work." (quoting *Cooke v. Palmetto Health All.*, 624 S.E.2d 439, 443 (S.C. Ct. App. 2005))).) To determine whether the instant Motion has merit, the court reassessed whether Mundy's employees were borrowed servants of Eastman leading up to the time of the accident that injured Jackson.[4] In this regard, the court initially observes that it is now persuaded that the

---

the inception of the Act, the fellow servant doctrine has generally been relegated to the employer-employee relationships outside of the scope of the Act. *See Thornton v. Thornton*, 262 S.E.2d 326, 327–28 (N.C. Ct. App. 1980); *cf. Stephen v. Avins Constr. Co.*, 478 S.E.2d 74, 77 (S.C. Ct. App. 1996) (decisions of North Carolina courts interpreting state's Workers' Compensation statutes are entitled to weight when South Carolina courts interpret South Carolina Workers' Compensation law).

[4] "Under the 'borrowed servant' doctrine, if an employer lends his or her employee to another, the first employer is not responsible for any negligence of the employee committed within the scope of his or her employment by the other." Elizabeth Williams, J.D., *Cause of Action Against Employer to Recover Under Doctrine of Respondeat Superior for Negligence of Employee*, in

first part of the borrowed servant test is satisfied because the evidence of record demonstrates that Mundy's employees agreed to heat the drain pipe on December 3, 2016, thereby demonstrating their consent to or acceptance of a special employment relationship with Eastman. *Eaddy v. A.J. Metler Hauling & Rigging Co.*, 325 S.E.2d 581, 583 (S.C. Ct. App. 1985) ("[C]onsent can be inferred from his acceptance of [] control." (citation omitted)). Therefore, the court presumes an implied contract of hire between Mundy's employees and Eastman.

Next, the court finds that because the heating of the drain pipe by Mundy's employees was part of the preventative maintenance to clean out one of Eastman's molten polymer production lines, Eastman specifically benefitted from the work conducted by Mundy's employees satisfying the second part of the test. *Id.* ("The second part of the test is met if the special employer benefits from the work." (citation omitted)). As to the third part of the borrowed servant test, the court must concern itself with whether Eastman as the special employer had the right to control the details of Mundy's employees' work. *Parker*, 239 S.E.2d at 489 ("The test generally used in determining whether an employee furnished by one person to another becomes the employee of the person to whom he is loaned is whether the employee passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it." (citing *Young v. Warr*, 165 S.E.2d 797 (S.C. 1969))). To resolve this inquiry, the court is to look at "'(1) direct evidence of the right to, or exercise of, control, (2) method of payment, (3) furnishing of equipment, and (4) right to fire.'" *Eaddy*, 325 S.E.2d at 583 (quoting *Chavis v. Watkins*, 180 S.E.2d 648, 649 (S.C. 1971)).

---

CAUSES OF ACTION SECOND SERIES, 53 COA2d 281 (May 2019) (citation omitted). "In this circumstance, the borrower becomes the employer to the exclusion of the lender, and the borrowing employer is liable for the negligent acts of a borrowed servant." *Id.* (internal and external citation omitted). "The lessor employer, the one loaning the employee to another employer, is known as the general employer." *Id.* "The lessee employer, the one borrowing the employee, is known as the special employer." *Id.* (citation omitted).

10

Upon its review, the court observes that the record lacks sufficient evidence as to the second, third, and fourth prongs of the *Eaddy* test for an outright determination that Eastman exercised special control over Mundy's employees to exempt it from liability.[5] Therefore, the court finds that Mundy is unable to satisfy all of the elements of the borrowed servant doctrine to exempt itself from liability in this action. Accordingly, the court is not persuaded that application of the borrowed servant doctrine based on the current evidence of record requires reconsideration of the October Order.

### III. CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, the court hereby **GRANTS IN PART** the Motion for Reconsideration (ECF No. 122) of Defendant Mundy Maintenance Services and Operations, LLC insofar as the fellow servant doctrine as contemplated by the Act cloaks it with immunity from liability for all claims alleged against it. As a result, the court **DISMISSES** the Complaint as it pertains to Mundy **WITHOUT PREJUDICE**.[6]

---

[5] The court observes that based on its review of the record the only evidence submitted relevant to this inquiry demonstrates that "Mundy received no work order request from either DAK or Eastman for the use of its W2 employees for that project, and Eastman was never billed for any 'Mundy' work related to heating of the drain pipe." (ECF No. 122 at 12 (referencing ECF Nos. 78-1 at 246:2–21; 78-2 at 131:20–132:13).)

[6] Mundy's original Motion to Dismiss was filed pursuant to Rule 12(b)(1). (*See* ECF No. 54.) Generally, when a court grants a party's Rule 12(b)(1) motion to dismiss, the decision does not constitute a judgment on the merits, and is therefore without claim preclusive or res judicata effect. *Farquhur v. United States*, C/A No. 1:07cv1033, 2007 WL 4233492, at *2 (E.D. Va. Nov. 28, 2007) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)). A determination that the exclusivity provision of the Workers' Compensation Act is applicable to a claim "should be deemed an adjudication rendered without prejudice to subsequent suit." *Zimmerman v. Coll. of Charleston*, C/A No. 2:12-505-DCN-BHH, 2012 WL 8899342, at *3 (D.S.C. Nov. 16, 2012).

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

May 21, 2019
Columbia, South Carolina